[No. C064590. Third Dist. Nov. 29, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JONATHAN OLE CLARK, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.B., II., V., VI. and VII. of the Discussion.

## COUNSEL

Suzanne M. Morris, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Brook Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MURRAY, J.**—A jury found defendant not guilty of the assault with a deadly weapon of his wife (Pen. Code, § 245, subd. (a)(1))[1] and not guilty of the assault by means of force likely to cause great bodily injury of his 14-year-old son (§ 245, subd. (a)(1)), but found him guilty of the lesser included misdemeanor offense of the simple assault (§ 240) of both his wife and son. The jury also found defendant guilty of the felony child abuse (§ 273a, subd. (a)) of his son. Defendant admitted serving a prior prison term. (§ 667.5, subd. (b).)

The trial court sentenced defendant to state prison for the felony child abuse and recidivist enhancement. It later imposed a concurrent term for the assault of his wife and a stayed concurrent term for the assault of his son. It also entered a no-visitation order with respect to defendant's son under the authority of section 1202.05.

---

[1] Undesignated statutory references are to the Penal Code.

On appeal, defendant asserts the following: (1) the evidence supporting his conviction for felony child abuse is insufficient to establish that the circumstances were likely to cause great bodily injury, or that defendant acted with criminal negligence; (2) the trial court erred by failing to instruct on unanimity in connection with the child abuse charge; (3) the trial court erred by failing to instruct on self-defense in connection with the child abuse charge and the lesser included offense of simple child abuse; (4) the trial court erred by failing to instruct on the right of reasonable parental discipline in connection with the felony assault charge and the lesser included offense of simple assault; and (5) the trial court did not have authority to impose the no-visitation order.

In the published portion of this opinion, we reject defendant's contentions concerning the sufficiency of the evidence of felony child abuse. We agree that the trial court erred by giving the jury instructions that allowed them to consider self-defense only in connection with the assault count and not in connection with the child abuse count. We also agree that the court erred in failing to instruct that the parental discipline defense applied to the assault count. However, these instructional errors were harmless.

In the unpublished portion of this opinion, we address and find harmless the court's failure to instruct that direct child abuse requires general criminal intent, and we reject defendant's contention concerning the need for a unanimity instruction on the child abuse count. We agree, and the People appropriately concede, that the court erred in issuing the no-visitation order. Finally, we correct a clerical error we found in the abstract of judgment.

As modified, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant had been separated from his wife for five years. He had custody of their 14-year-old son, with whom he had an up-and-down relationship. The wife had moved in with defendant a couple of weeks before the day of the incident out of which the charges arose. She wanted to help take care of the children because defendant had a hernia. There had been previous domestic violence between defendant and his wife, which resulted in defendant's 2004 felony conviction for spousal abuse. For "a few weeks" before the incident, defendant and his son were angry at each other, and had barely spoken.

On the morning of the incident, defendant's son and the wife were sitting on the sofa watching television when defendant entered the room and asked what had happened to his Honda 90 motorcycle and who had broken the mirror on his truck. Defendant's son denied knowing anything about the

motorcycle or the truck. Defendant then pretended to throw a glass knick-knack at his son and wife, boasted that he had made them flinch, and left the room.

Defendant returned shortly afterward and began questioning his wife in a raised voice. Defendant's son thought his mom was "a little freaked out" because of defendant's tone of voice. It seemed to the son that defendant was trying to start a fight with the wife; he said something about wanting to throw her out of the house. Defendant's eight-year-old daughter was running around the room playing at the time.

Defendant walked over to the bookshelves and picked up a river rock, which he began to toss up and down. He threatened to "hit somebody" with the rock when he did not get any answers to his questions about the motorcycle and truck.

Defendant walked close to the wife, at which point the son got up to intercede in case anything happened. Defendant got angrier and appeared to the son to be in a "pissed off" mood. He threw the rock at the son's cell phone, which was lying on the couch. Both defendant and the son went to grab the phone, wrestling each other on the couch for it. The two were "basically on top of each other." The son heard the phone cracking from defendant's grip.

At some point during the wrestling over the phone, the son was on top of defendant. Defendant told his son, "[l]et me stand up and I'll give you the cell phone back." The son agreed and got off defendant. The son demanded his cell phone back and admitted breaking the mirror on the truck. Defendant then pushed the son back onto the sofa and threw the phone to the ground, smashing it.

The wife, who was hustling their daughter out of the house to prevent her from witnessing the scuffle, had a cordless phone in hand and said she was going to call the police. Defendant chased after his wife. As he pursued, defendant swore at her, calling her a bitch and "a whole bunch of bad words." Defendant's wife called 911 as she fled.

The son ran outside after them. The son was angry about the cell phone, which cost $700, and he wanted to fight defendant. However, he was primarily concerned about preventing defendant from hurting his mother. He explained, "I really didn't care about the phone once he was chasing my mom." "He was going to go for my mom, and I was tired of seeing that happen."

The son caught defendant near the outside steps. He could not jump on defendant's back because defendant was "too tall." Instead, the son pushed

and tried to hit defendant. Defendant slapped his son, pushed him away and continued to chase after his wife. The son caught up with defendant again. Defendant tripped his son, causing the son to fall on the ground onto his back.

After his son fell to the ground, defendant got on top of his son and slapped him on the sides of his head with open palms. As he struck his son, defendant said something like, "I don't want to do this." The son was unsure how many times defendant slapped him, but estimated it may have been more than five times. The son called the slaps "bitch slap[s]" and testified that the slaps did not hurt.

After slapping his son, defendant got up and resumed the pursuit of his wife, who was on the phone with 911. Defendant threw one or two pieces of asphalt at his wife during the chase. Defendant fell down and the wife made it to the neighbor's yard. Defendant then broke off his pursuit, went back inside the house to put on a shirt, and drove off. At some point before leaving, defendant told his wife, "You're going to regret that call, bitch."

The son had dried mud on the back of his shirt when later photographed. He sustained "cuts" and a "gash" on his mid and lower back. Photographic exhibits introduced into evidence depicted patches of discoloration that had the appearance of superficial abrasions in the area of these injuries.

The defense rested without calling any witnesses.

The trial court instructed the jury on the offense of simple assault as a lesser included offense to the felony assault counts on defendant's wife (assault with a deadly weapon) and son (assault with force likely to cause great bodily injury). Additionally, the court instructed the jury on the offense of simple child abuse on count 3, a lesser included offense of child abuse under circumstances and conditions likely to produce great bodily harm, a felony.

## DISCUSSION

### I. Felony Child Abuse

A. *Sufficiency of the Evidence Concerning Circumstances and Conditions Likely to Produce Great Bodily Harm*

Defendant contends that the evidence was insufficient to establish that any injury was inflicted under circumstances and conditions likely to produce great bodily harm. " ' "The standard of review is well settled: On appeal, we

review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" ' " (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1332 [56 Cal.Rptr.3d 455] (*Racy*).) " ' "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact]." ' " (*Ibid.*) "Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 480 [42 Cal.Rptr.3d 677, 133 P.3d 581].)

Felony child abuse is defined in section 273a, subdivision (a), which provides in pertinent part: "Any person who, *under circumstances or conditions likely to produce great bodily harm* or death, willfully . . . inflicts thereon unjustifiable physical pain . . . , or having the care or custody of any child, willfully causes . . . the person or health of that child to be injured, . . . shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years."[2] (Italics added.)

The prosecution proceeded on the third branch of this omnibus statute,[3] asserting that defendant willfully caused injury to his son under circumstances or conditions likely to produce great bodily injury. In closing argument, the prosecutor told the jury that the two counts involving the son (assault with force likely to cause great bodily injury and child abuse under circumstances likely to produce great bodily harm) were based on defendant's acts outside the house, when defendant "threw" the son to the ground, straddled him, and slapped him.

Defendant notes that in denying his motion for acquittal, the trial court characterized the evidence of force likely to produce great bodily harm as being "very close." Defendant asserts that in fact the evidence was legally insufficient, because the record lacks any testimony about the degree of force of the son's impact with the ground, the son testified that the slaps did not

---

[2] The difference between felony child abuse, a violation of section 273a, subdivision (a), and simple child abuse, a violation of section 273a, subdivision (b), is that the latter does not require that the abuse occur under "circumstances or conditions likely to produce great bodily harm."

[3] Section 273a, subdivision (a) is an omnibus statute that proscribes essentially four branches of conduct: (1) willfully causing or permitting a child to suffer, or (2) inflicting unjustifiable physical pain or mental suffering on a child, or (3) having the care or custody of any child, willfully causing or permitting the person or health of a child to be injured, or (4) willfully causing or permitting a child to be placed in such situation that its person or health is endangered. (*People v. Sargent* (1999) 19 Cal.4th 1206, 1215 [81 Cal.Rptr.2d 835, 970 P.2d 409] (*Sargent*).)

hurt, the photographic evidence showed only minor scratches without any bruising or swelling, and the record does not indicate the son complained of any pain when speaking to the police or that he needed any treatment. He therefore contends the evidence is insufficient to establish great bodily harm was *likely*, as opposed to merely *possible*.

Defendant relies heavily on cases involving the charge of assault with force likely to produce great bodily injury. These cases quite naturally focus on the force *actually used* to determine if that force was likely to cause great bodily injury to the victim. For example, defendant cites *People v. Duke* (1985) 174 Cal.App.3d 296, 302–303 [219 Cal.Rptr. 873], in which the court held that a momentary stranglehold *of itself* without any effort to choke the victim, during which the victim could still breathe, and resulting only in a scratch from her own earring was not sufficient to establish assault with force likely to produce great bodily injury.

■ Defendant misses the point. Felony child abuse does not require force likely to produce great bodily injury. It requires the willful infliction of injury *under circumstances and conditions likely to produce great bodily injury*. While force may be one circumstance or condition, it is not the only circumstance or condition that may support a conviction for felony child abuse.[4]

For example, in *Sargent*, our high court noted that the age of the infant victim, the fragile physical development of the infant victim, and the degree of force used were circumstances and conditions a jury could consider. "By contrast, if [the victim] had been a 17-year-old varsity linebacker, those facts would also have been 'circumstances or conditions' the jury would consider." (*Sargent, supra*, 19 Cal.4th at p. 1221.)

This court recently discussed the element of circumstances or conditions likely to produce great bodily injury in *Racy*, a case involving felony elder abuse.[5] There, the defendant zapped the victim with a stun gun. (*Racy, supra*,

---

[4] We note that the jury instruction on this offense, CALCRIM No. 821, is entitled, "Child Abuse Likely to Produce Great Bodily Harm or Death." In his closing argument, defense counsel also referred to the crime as child abuse likely to produce great bodily harm. The jury received a copy of this instruction that included the title.

The title is misleading. To avoid potential confusion, we suggest that the Judicial Council consider retitling CALCRIM No. 821 to "Child Abuse *Under Circumstances or Conditions Likely to Cause Great Bodily Harm or Death*."

[5] Felony elder abuse is defined in section 368, subdivision (b)(1), which provides: "Any person who knows or reasonably should know that a person is an elder or dependent adult and who, *under circumstances or conditions likely to produce great bodily harm* or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent

148 Cal.App.4th at p. 1330.) The victim suffered pain, but was not physically injured. (*Id.* at p. 1331.) The defendant asserted on appeal that, in the absence of expert testimony, there was insufficient evidence to establish that the stun gun was likely to produce great bodily injury or death. (*Id.* at p. 1332.) From this, the defendant argued that the evidence was insufficient to establish the element of circumstances and conditions likely to produce great bodily injury. (*Ibid.*) This court agreed that under the facts of that case, use of the stun gun alone was insufficient to establish the requisite circumstances or conditions. (*Id.* at pp. 1332–1333.) However, there were circumstances and conditions other than the use of the stun gun that supported the conviction. (*Id.* at p. 1333.)

The "[d]efendant 'zapped' [the victim] in the leg with a stun gun, causing him substantial pain. Presumably, to escape the situation and avoid more pain, [the victim] retreated to his bedroom, and defendant gave chase following 'so close[ly]' that [the victim] could not shut the bedroom door. When [the victim] moved to the bed, defendant repeatedly 'zapped' the stun gun 'in the air' and then 'tip[ped] [the victim] over' and grabbed his wallet, tearing [the victim's] jeans pocket. The struggle moved the bed approximately one foot away from the wall and caused [the victim] to trip. [¶] From this evidence, the jury reasonably could have concluded that defendant's close pursuit of [the victim] (which prevented [the victim] from locking the door) *or* the force defendant exerted on [the victim] (which was strong enough to tip him over, tear his jeans pocket, and cause a struggle in which [the victim] tripped and the bed moved one foot) likely could have caused [the victim] to fall and break a bone, causing him great bodily harm. As stated, [the victim's] knees are disabled and he is 74 years old, which, as a matter of common knowledge, is an age that carries with it an increased risk of bone fractures from a fall. The jury was in the best position to observe [the victim's] condition at trial, and we will not second-guess the jury's finding that defendant inflicted pain or suffering on [the victim] 'under circumstances or conditions likely to produce great bodily harm or death' where the record contains sufficient evidence to support that finding." (*Racy, supra,* 148 Cal.App.4th at p. 1333, italics added.)

adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health is endangered, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand dollars ($6,000), or by both that fine and imprisonment, or by imprisonment in the state prison for two, three, or four years." (Italics added.)

As our high court has observed, section 368 is patterned on and virtually identical to section 273a. (*People v. Valdez* (2002) 27 Cal.4th 778, 787 [118 Cal.Rptr.2d 3, 42 P.3d 511]; *Sargent, supra,* 19 Cal.4th at p. 1216, fn. 6; *People v. Heitzman* (1994) 9 Cal.4th 189, 204–205 [37 Cal.Rptr.2d 236, 886 P.2d 1229].)

■ Whether the injury is inflicted under circumstances or conditions likely to produce great bodily injury is a question for the trier of fact. (*Sargent, supra*, 19 Cal.4th at p. 1224.) The discussions in *Sargent* and *Racy* suggest that circumstances and conditions a reasonable jury could consider include, but are not limited to, (1) the characteristics of the victim and the defendant, (2) the characteristics of the location where the abuse took place, (3) the potential response or resistance by the victim to the abuse, (4) any injuries actually inflicted,[6] (5) any pain sustained by the victim, and (6) the nature of and amount of force used by the defendant. Here, a rational jury could have found that the totality of the circumstances and conditions created a substantial danger of great bodily injury. (*People v. Wilson* (2006) 138 Cal.App.4th 1197, 1204 [41 Cal.Rptr.3d 919] [" 'likely' as used in section 273a means a substantial danger, i.e., a serious and well-founded risk"].)

We acknowledge that there is scant evidence in the record concerning the characteristics of defendant's son and defendant. The prosecutor never asked how tall the son was or how much he weighed on the date of the incident. Likewise, there is no evidence in the record concerning defendant's height and weight.

Nevertheless, defendant's son was only 14 years old. Although height and weight are difficult to estimate, it is clear from the photographic evidence that he is not a large teenager. Indeed, he appears to have been of average height and relatively thin at the time. He is certainly not the varsity linebacker mentioned in *Sargent*. We also note that the son testified he could not jump on defendant's back when defendant was chasing the wife because defendant was "too tall." Thus, the evidence suggests that this 14-year-old boy was smaller than defendant.[7] The evidence further indicates that defendant was heavy enough to cause "cuts" and a "gash" to his son's back while the son was pinned to the ground. In any event, as in *Racy*, the jury was in a position to see and assess the physical characteristics of the victim and defendant here. The jury reasonably could have considered the characteristics of the victim and defendant in determining whether the circumstances or conditions were likely to cause great bodily injury.

As the prosecutor noted in his closing argument, the acts underlying the charges did not take place on a cushioned surface. Defendant tripped the victim, causing him to fall onto his back on the ground outside of the house. The photographs depict a bare dirt area littered with leaves and rocks.

---

[6] There is no requirement that the victim actually sustain great bodily injury (*Sargent, supra*, 19 Cal.4th at p. 1216), but it is a factor to consider.

[7] We ignore the People's inappropriate reference to defendant's height and weight as listed in the probation report. The probation report was obviously not evidence introduced during the trial.

Defendant's son testified that defendant had sown chunks of asphalt into the ground using his backhoe and that it was chunks of this asphalt that defendant threw at his wife after getting off of the victim.

Although a fusillade of open-handed "bitch slaps" might not ordinarily result in great bodily injury, a reasonable jury rationally could conclude that there was a substantial danger of eye injury had the son made an unanticipated turn of the head in an effort to resist defendant. Also, it would be rational to conclude that falling on rocky ground onto one's back involved sufficient force to make great bodily harm likely on impact. In such a fall, there was a substantial danger of the son's head hitting the ground, thus presenting a serious risk of head injury. Also, it is common knowledge that falling to the ground as the result of an unexpected tripping creates a substantial danger of broken bones, torn ligaments or other injuries. The fact that the injuries sustained did not rise to the level of great bodily injury does not mean that there was not a substantial danger or well-founded risk of great bodily injury.

■ The characteristics of the victim and defendant, the location, and the potential response or resistance of the victim presented circumstances or conditions upon which the jury could reasonably have relied. Thus, the evidence of force, coupled with these other circumstances and conditions, was sufficient to support the jury's determination that the totality of the circumstances and conditions were likely to produce great bodily harm.

B.  *Criminal Negligence Instruction**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II.  Unanimity Instruction*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.  Self-defense

A.  *Factual and Procedural Background*

Defendant's wife gave a somewhat different version of the events than did the couple's son. Her testimony, coupled with that of the son, warranted self-defense instructions.

The wife testified that while she and their son were watching television, the son was showing her his "cool" cellular phone. The son tried to hide the

*See footnote, *ante*, page 235.

phone under his leg when defendant came in asking about his missing motorcycle and the broken mirror on his truck. The wife thought defendant seemed irritable because of his hernia. Defendant asked their son what he was hiding and then the two began "scuffling" over the phone. Defendant finally gained control over the phone. When the son demanded return of the phone and admitted he was responsible for breaking the truck mirror, defendant responded, "Oh yeah," and then threw the phone to the ground, causing it to break.

The wife grabbed a cordless phone while the two "scuffl[ed]" and told them she was calling the police. She testified, "They wouldn't stop fighting. I didn't know what to do. . . . [¶] . . . [¶] . . . I didn't want them to hurt each other." She described the scuffling "[l]ike bitch slapping . . . trying to manhandle each other."

As she walked out of the house with the phone in her hand, she heard the son yell, "Mom, run." She ran a few steps, but turned around and saw defendant and their son "both like falling to the ground, scuffling." She testified that defendant got up and started to run and their son ran after defendant. The son was "like halfway on [defendant], and they're like dragging each other." Defendant was not advancing on her. Instead, he was going toward his truck. However, she admitted that defendant threw a rock at her while she was speaking to the 911 operator.

Defense counsel requested that the court give self-defense instructions applicable to both the assault count in which the son was alleged to be the victim and the child abuse count. He argued that the son was not a "young child," that the son was angry with his father and wanted to fight him, the jury could infer that the son was an "active individual in any . . . physical confrontation," and find that defendant acted in self-defense.

The trial court agreed to instruct on self-defense with respect to the felony assault and lesser included offense of simple assault of the son. However, it refused defendant's request to instruct on self-defense in connection with the count of felony child abuse and the lesser included offense of simple child abuse. The court noted there were no cases that explicitly sanctioned self-defense as a defense to child abuse, and it agreed with the prosecutor that the defense of parental discipline incorporated the same reasonable use of force concept as the self-defense instruction. The prosecutor also argued, and the court apparently believed, that the defense of parental discipline is grounded in statute and that the Legislature had expressed through legislation a desire

to limit the use of force against children to the parental discipline defense.[10] No statute was cited by the prosecutor, however.

## B. *Analysis*

■ Whether self-defense can be a defense to direct child abuse presents itself as an issue of first impression here. The People impliedly concede that the defense applies, offering no argument to the contrary. We hold that self-defense can be a defense to direct child abuse charged under the third branch of section 273a. Under the facts of this case, the trial court should have made the self-defense instruction applicable to both the felony assault charge and the felony child abuse charge as well as the lesser included offenses to each. However, the error here was harmless.

The Legislature has spoken on the defense of self-defense, but not on the defense of parental discipline. Self-defense is codified in statute. Section 692 provides that, "Lawful resistance to the commission of a public offense may be made: [¶] 1. By the party about to be injured; [¶] 2. By other parties." Section 693 provides in pertinent part, "Resistance sufficient to prevent the offense may be made by the party about to be injured: [¶] 1. To prevent an offense against his person, or his family, or some member thereof."

■ As can be seen from the statutory language, the Legislature codified self-defense in nonexclusive terms. We discern no legislative intent to preclude application of the defense in cases where the threat of harm to the person comes from a minor. Nor does the plain language of any of the self-defense statutes indicate a legislative intent to prohibit those accused of direct child abuse from asserting the defense.[11] "Under the standard rules of statutory construction, we will not read into the statute a limitation that is not

[10] The prosecutor told the court, "The Legislature has already built in a defense to child abuse as the parental right to discipline. [Defense counsel] is welcome to argue that defense . . . . We do not need to create a secondary defense in this case."

The court said, "[I]n looking at the self-defense instruction, [CALCRIM No.] 3470, and the parental right to punish a child, [CALCRIM No.] 3405, which is a defense to Count 3 and the lesser included, both of those offenses deal with physical force, justifiable physical force. So it looks like the Legislature intended to use similar language for the various aspects of this case that could potentially come out in facts."

When counsel for defendant sought clarification of how he could argue parental discipline instead of self-defense on the child abuse charge in the context of the evidence in this case, the court said, "They're similar in terms of the language, and then you point out to the jury that the Legislature used certain phrases . . . . [¶] . . . [¶] . . . You juxtapose the defenses and explain that there are key phrases here which apply to each defense . . . [¶] . . . [¶] . . . but the one thing that you're not going to be able to do is to blend the division between the defenses and the offense to which it applies."

[11] The use of deadly force in self-defense has been codified in section 197. In pertinent part, section 197 provides: "Homicide is . . . justifiable when committed by any person in any of the following cases: [¶] 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, [¶] 2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by

there" (*People v. Bautista* (2008) 163 Cal.App.4th 762, 777 [77 Cal.Rptr.3d 824]), and "[i]n the absence of unequivocal language, we cannot ascribe to the Legislature an intention to penalize the exercise of a right it has specifically bestowed" (*People v. Curtis* (1969) 70 Cal.2d 347, 357 [74 Cal.Rptr. 713, 450 P.2d 33], disapproved on other grounds in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1222 & fn. 19 [275 Cal.Rptr. 729, 800 P.2d 1159] [the basic privilege to resist the application of force in §§ 692 and 693 is the basis for the right to resist the application of excessive force employed by a peace officer in effectuating an arrest]).

■ The trial court also rejected the self-defense instruction, in part, because it found no case law supporting the application of self-defense in a child abuse case. We find it more telling that there is an absence of case law prohibiting the defense in the child abuse context. Indeed, the case law suggests broad application of the defense without regard to the charge or the source of the threat perceived by a defendant. Self-defense focuses on "the nature of the threat [to the defendant], rather than its source." (*People v. Lee* (2005) 131 Cal.App.4th 1413, 1427 [32 Cal.Rptr.3d 745] [the defense of self-defense can apply to an attack by an animal].) And self-defense may even be available to a defendant who resists a simple battery. (*People v. Myers* (1998) 61 Cal.App.4th 328 [71 Cal.Rptr.2d 518] [defendant who pushed the victim away after the victim poked a finger in the defendant's chest was entitled to a self-defense instruction].) We see no reason why the codified defense of self-defense should not be available to anyone who lawfully resists the application of force regardless of the source of the force and regardless of the charges levied by the prosecution.

■ Unlike the defense of self-defense, the right to parental discipline is not codified in statute. While a parent has a right to reasonably discipline his or her child and may administer reasonable punishment without being criminally liable (see *People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050 [12 Cal.Rptr.2d 33] (*Whitehurst*), and cases cited therein), the Legislature has not expressed an intent to limit the use of force against children to that right.

violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or, [¶] 3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed . . . ."

Self-defense has also been codified as a defense in civil cases. Civil Code section 50 provides in pertinent part: "Any necessary force may be used to protect from wrongful injury the person . . . of oneself, or of a wife, husband, child, parent, or other relative, or member of one's family . . . ."

Moreover, contrary to the trial court's reasoning, self-defense and the right to parental discipline are not congruent. While both provide legal justification for the application of force, the purpose for which the force is used is different. Consequently, the amount of force that may be used may be different.

■ As the jury was instructed on the assault count, a defendant acts in lawful self-defense if "one, the defendant reasonably believed that he was in imminent danger of suffering bodily injury . . . or was in imminent danger of being touched unlawfully; two, the defendant reasonably believed that the immediate use of force was necessary to defend against that danger; and three, the defendant used no more force than was reasonably necessary to defend himself against that danger." (CALCRIM No. 3470.) The jury was also appropriately instructed that the threat of danger must be imminent (*People v. Aris* (1989) 215 Cal.App.3d 1178, 1187 [264 Cal.Rptr. 167], overruled on another ground in *People v. Humphrey* (1996) 13 Cal.4th 1073, 1089 [56 Cal.Rptr.2d 142, 921 P.2d 1]; CALCRIM No. 3470) and the defendant may use whatever force is reasonably necessary to prevent the injury or unlawful touching (*Aris, supra*, 215 Cal.App.3d at p. 1187). A defendant is not required to retreat and may in fact pursue the assailant until the danger of injury or unlawful touching has passed (*People v. Collins* (1961) 189 Cal.App.2d 575, 588–589 [11 Cal.Rptr. 504]; CALCRIM No. 3470), but a defendant may use force only as long at the danger exists or reasonably appears to exist (*People v. Keys* (1944) 62 Cal.App.2d 903, 916 [145 P.2d 589]).

■ As the jury was instructed on the child abuse count, the use of physical force against a child is justified "if a reasonable person would find that punishment was necessary under the circumstances and that the physical force used was reasonable." (CALCRIM No. 3405.) Thus, "corporal punishment is unjustifiable when it is . . . not necessary, or when such punishment, although warranted, was excessive." (*Whitehurst, supra*, 9 Cal.App.4th at p. 1050.)

■ . The contrast between the two defenses is stark. The defenses provide legal justification for the use of force for two different purposes. Self-defense allows the use of reasonable force to resist the unlawful application of force or unlawful touching. The right to parental discipline allows the use of reasonable force to discipline a child. The reasonableness of the force used is measured by the purpose for which the force is used. The amount of force reasonably needed to discipline will not necessarily be the same as the amount of force that is reasonable to repel an attack or resist an unlawful touching. Indeed, the use of more extreme physical force, including deadly force, might be reasonable to repel an attack, but clearly unreasonable

for purposes of disciplining a child. On the other hand, certain corporal punishment might be reasonable for discipline but unreasonable to resist a simple unlawful touching.[12]

Thus, the parental discipline instruction given by the trial court did not substitute for the concepts related to the defense of self-defense. It was error to exclude self-defense as a defense to felony child abuse and simple child abuse.

The error was, nevertheless, harmless under any standard. As we have noted, the assault count and the child abuse count were based on the same conduct. Since the court instructed on self-defense in connection with the felony assault and the lesser included offense of simple assault, and the jury convicted defendant of the lesser included offense, it necessarily rejected self-defense as a legal justification for defendant's conduct. Therefore, any error in failing to instruct on self-defense in connection with the child abuse count was harmless under any standard of review. (Cf. *People v. Carter* (1998) 60 Cal.App.4th 752, 756 [70 Cal.Rptr.2d 569] (*Carter*); *People v. Dyer* (1988) 45 Cal.3d 26, 65 [246 Cal.Rptr. 209, 753 P.2d 1] (*Dyer*).)

Defendant attempts to avoid the application of harmless error by asserting that there is an inconsistency between the acquittal of felony assault and the guilty verdict on the felony child abuse count since both verdicts were grounded on the same conduct. Defendant argues the application of self-defense to the felony assault charge explains this perceived inconsistency. He contends that the jury could have based its verdicts on the finding that the use of force underlying the assault count was justifiable self-defense while the same use of force was not justified as parental discipline. Defendant asserts he was prejudiced because if the jury had been allowed to consider self-defense on the felony child abuse count, it would have convicted him of no more than simple child abuse consistent with the verdict of simple assault on the felony assault count.

---

[12] There are other differences between the two defenses. When a parent engages in reasonable corporal discipline, the child does not have the right to resist that discipline by use of force against the parent. Consequently, it does not matter who is the initial aggressor when a parent exercises the right to discipline and the discipline employed is reasonable. Also, the rules concerning mutual combat have no applicability when a parent justifiably disciplines a child. Nor is the parent necessarily required to stop disciplining a minor just because a minor who initially resists with force stops using force against the parent, whereas self-defense rules require the defendant to stop using force when the danger of an attack or unlawful touching no longer exists. These distinctions might not be readily apparent to jurors. We recommend that the Judicial Council consider providing bracketed pattern instructions in CALCRIM No. 3405 that explain the distinctions between self-defense and parental discipline to be used in cases where instructions on both defenses are given.

Defendant's major premise is erroneous. There is no inconsistency. Again, focusing strictly on the application of force, defendant fails to recognize the difference between felony assault and felony child abuse. The felony assault count involving defendant's son required that the prosecution prove that the assault was with *force likely* to produce great bodily injury. The jury's focus on that count was on the amount of force actually used. The felony child abuse count required that the prosecution prove that defendant inflicted injury under *circumstances or conditions likely* to produce great bodily harm. On that count, the jury was required to focus on the totality of the circumstances and conditions surrounding the abuse. Thus, the jury's verdict is explained by the fact that the jury was required to make determinations on two distinctly different elements. There is nothing inconsistent about the jury determining the evidence of force likely to cause great bodily injury was insufficient on the felony assault count, but at the same time finding that the totality of the circumstances and conditions were likely to produce great bodily harm on the felony child abuse count.

Defendant also contends that the jury could have determined defendant acted in lawful self-defense when he tripped his son, pinned him to the ground and slapped him, but convicted defendant of simple assault based on the acts that occurred inside the house. Here defendant ignores the prosecutor's express election. In his closing argument, the prosecutor told the jury the charges were based on the conduct that occurred outside of the home. In effect, the prosecutor told the jury he was not prosecuting defendant for the events that occurred inside the house relative to his son.

### IV.  The Right to Parental Discipline

In the converse of his previous argument, defendant argues the trial court should have instructed sua sponte on the defense of the parental right to employ reasonable discipline with respect to the assault count involving his son. We agree. The court should not have limited the parental discipline instruction to the child abuse count. The defense can apply to any form of parental discipline. (See *People v. Checketts* (1999) 71 Cal.App.4th 1190 [84 Cal.Rptr.2d 491] [reasonable acts of discipline, including confinement to a particular location for disciplinary purposes, would be a defense to false imprisonment, but where the act of confinement is done with an intent to endanger the health and safety of the child or to achieve an unlawful purpose, such an act exceeds the scope of parental authority].) Certainly, the defense can apply to any act of corporal punishment regardless of how the prosecution decides to charge the case.

However, since the jury necessarily rejected his claim of justifiable discipline in connection with its verdict on the child abuse count, any error in

failing to include a similar instruction for the assault count is harmless under any measure of error. (Cf. *Carter, supra,* 60 Cal.App.4th at p. 756; *Dyer, supra,* 45 Cal.3d at p. 65.)

## V.–VII.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

We strike the no-visitation order from the judgment, and affirm it as thus modified. The trial court is directed to prepare an amended abstract of judgment deleting the no-visitation order and reflecting that defendant was sentenced to the low term for his conviction for felony child abuse. The trial court is further directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

Raye, P. J., and Butz, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 29, 2012, S199288.

---

[*]See footnote, *ante,* page 235.