Filed 3/25/13  P. v. Galvez CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B237299 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA051645) |
| v. | |
| HECTOR HUGO ARGUETA GALVEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Naranjo, Judge.  Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General and William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted Hector Galvez of corporal injury to a spouse, felony child abuse, criminal threats, and assault by means likely to cause great bodily injury. Galvez appeals, arguing that there was insufficient evidence to convict him of felony child abuse. We affirm.

## BACKGROUND

A second amended information filed April 13, 2011 charged Galvez with one count of corporal injury to a spouse, cohabitant, or child's parent, in violation of Penal Code[1] section 273.5, subdivision (a) (count 1); one count of felony child abuse, in violation of section 273a, subdivision (a) (count 2); one count of criminal threats, in violation of section 422 (count 3) ; and three counts of assault by means likely to produce great bodily injury or with a weapon, in violation of section 245, subdivision (a)(1) (counts 4, 5, and 6). Galvez pleaded not guilty.

A jury found Galvez guilty on all counts. Galvez was sentenced to nine years and eight months in state prison, with fines, fees, and restitution. He filed this timely appeal.

## DISCUSSION

Galvez's sole argument on appeal is that there was insufficient evidence to convict him of felony child abuse (count 2). We recount the evidence at trial.

In a call to 911 at 2:00 a.m. on January 23, 2011, Estenia Rodriguez reported that her sister-in-law's husband was beating her sister-in-law up, keeping her inside the house where the children were crying (Estenia was calling from outside).

The beating victim was Gladys Soriano. Soriano testified that she had lived with Galvez for approximately seven years. At the time of the 911 call Soriano and Galvez lived in Palmdale, with their four-year-old son A.A., and Soriano's eight-year-old daughter by another father, K.F. Soriano's brother Illidio Rodriguez and Estenia, his wife, were visiting from out of state and staying in the house.[2]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] For clarity, we refer to the Rodriguezes as Estenia and Illidio. No disrespect is intended.

The previous day, Galvez, Soriano, the two children, and Illidio and Estenia went to a baby shower. Galvez wanted to dance, but Soriano said no. Galvez started to drink beer and tequila. Later, Soriano danced with a female friend and her male friend and then sat back down. Galvez, who continued to drink, was upset with Soriano. At the preliminary hearing, Soriano had testified that Galvez called her a bitch and said, "'You went and danced with somebody, but you wouldn't dance with me.'"[3]

Soriano left the party in her car, and Galvez left in his. Once home, Soriano was washing dishes in the kitchen, and she and Galvez began to argue about her dancing with someone else. At the preliminary hearing, Soriano testified that Galvez said, "'"You see, you bitch. You didn't want to dance with me, but you danced with others" and he hit me in my rear end three times.'" Galvez grabbed her around her neck with both hands, squeezing until she found it hard to breathe and felt she was losing consciousness. She had also testified at the preliminary hearing that Galvez was saying, "'"You fucking bitch. You're not knowing what I'm capable of. I would rather kill you."'" Galvez then dragged Soriano by the hair to the living room and threw her by the couch, leaving scratches and marks on her neck. During the struggle, Galvez threw kitchen items to the floor, and a chair was overturned.

A close friend of the couple, Sergio Herrera, was also at the house, and he went to get Estenia and Illidio from their room. Illidio told Galvez not to argue with Soriano, but Galvez "'got me bent against the cement table and I couldn't get away from that and then he was telling my brother that if he wanted to get involved, that he could kill—he could get killed, too.'" The children were in the room watching everything, crying and shaking, with K.F. saying, "'"Don't beat up my mother."'" Galvez kicked Estenia and Illidio out of the house and locked the door.

---

[3] Soriano was hesitant to testify and stated she did not want charges against Galvez. After she repeatedly testified that she could not remember many of the events, the prosecutor read her preliminary hearing testimony into the record.

Soriano suffered scratches on her neck, an abrasion on her right knee, a bruise on her left calf, and a four-inch bruise on her inner thigh; a neck injury prevented her from turning her head for a week.

At the preliminary hearing, Soriano had testified that in April of 2010, Galvez had been drinking and approached her with a six-inch knife, holding it close to her, cutting himself, and smearing her with his blood. Galvez said, "'"You fucking bitch. You don't know what I'm capable of."'" Soriano had also testified that in October of 2010, Galvez was drinking with Herrera and threw an empty beer bottle at Soriano, who was washing the dishes. She dodged the bottle. Galvez picked up a piece of the shattered bottle and made a fist around it, cutting his palm, and said, "'"This is how you shatter a glass."'"

Herrera testified that in October 2010, he and Galvez were drinking at Soriano's kitchen table, and Galvez threw an empty beer bottle at Soriano and then cut himself by accident. On January 23, 2011, he had gone to the party with Galvez and Soriano. When they returned to the house, Galvez and Soriano argued, and Herrera saw from the living room that Galvez had Soriano by the neck with one hand, squeezing it so she couldn't breathe, and was hitting her with the other hand. Herrera went to get the Rodriguezes from their room, and when he returned, Galvez was still choking Soriano. The children were on the living room couch, crying, when Galvez dragged Soriano by the hair into the living room. He did not see K.F. approach Galvez and Soriano.

Eight-year-old K.F. testified that she could not remember what had happened the night after the baby shower, and that she did not know what to say. She did not remember telling the deputy that she heard arguing and saw Galvez grabbing Soriano by the hair and by the throat. She also did not remember telling the deputy that she grabbed Galvez by the arm and tried to stop him. K.F. said that when she told the deputy that Galvez had punched her on the right side of her head, "I lied because I was mad with my dad." When she told the deputy that Galvez also hit her on her left shoulder with his fist, she meant "he was just like playing with me." The scratches on Soriano's neck were from Soriano scratching her throat because it was itchy. K.F. agreed that "things are very difficult because [she] told the sheriff's deputy what [she] told him the night of the baby

4

shower." As she testified, K.F. was looking at Soriano, who was crying. A photograph of K.F.'s shoulder, taken that night, was "a lie." A mark on her shoulder was a scar from a shot when she was younger.

Deputy Sheriff Charles Dana testified that on January 23, 2011, he responded to the scene and found Soriano crying, with scrape marks all over her chest. He did not speak Spanish and there were no Spanish-speaking officers working that night. With a neighbor translating, Soriano told him that Galvez became angry when she danced with someone else at the party, and back home Galvez called her a bitch and grabbed her by the hair. He then grabbed her by the throat and squeezed until she had difficulty breathing. Soriano told Deputy Dana that K.F. then came into the kitchen and grabbed Galvez by the arm to stop him, and Soriano saw Galvez punch K.F. once in the head and once in the left shoulder. K.F. ran off, and Galvez dragged Soriano by her hair from the kitchen into the living room, and tried strangling her some more. Estenia told Galvez that she was calling 911, and Galvez and Soriano separated, yelling at each other. Deputy Dana saw red scratch marks on the base of Soriano's neck, and a red mark on K.F.'s left shoulder.

K.F. told Deputy Dana that she saw Galvez holding Soriano by the hair with one hand and by the throat with the other. When K.F. tried to grab Galvez's arm, he hit her once in the head and once in the left shoulder. K.F. then ran to the Rodriguezes' room to get help. Estenia told Deputy Galvez that K.F. told Estenia that Galvez had punched her in the arm and shoulder, and she needed help.

Deputy Dana did not see any injury to K.F.'s head, and a photograph did not show any. On K.F.'s shoulder, he saw a small red abrasion shown in a photograph, which also depicted a vaccination mark which was distinct from the abrasion.

Deputy Gustavo Munoz testified that he was fluent in Spanish and spoke to Soriano two months later, on March 23, 2011. Soriano told him that in April 2010, after a party at which Galvez had been drinking, they argued at home. Galvez grabbed a kitchen knife and held the tip against her stomach, saying, "'Don't mess with me because you don't know what I'm capable of.'" A.A. was present. Soriano told Deputy Munoz

5

that in October 2010, Galvez threw a 12-ounce beer bottle at her, and if she had not moved, it would have struck her face.

Detective India Inez testified as an expert about recanting witnesses in domestic violence cases. She had been the initial responder to hundreds of domestic violence calls, had investigated over 400 domestic violence cases, and was the lead investigator on a grant in the Palmdale sheriff's station examining the exposure of children who witness domestic violence. At the preliminary hearing, a domestic violence incident often was still fresh to the victim, who might still have some physical injury. By the time of trial, however, victims tended to forget the fear they felt at the time of the incident, and believe that the defendant had been in jail long enough and had been punished. Victims with children also would minimize or recant their statements, wanting their children to have both parents and fearing the financial repercussions of losing a wage-earner. Minimizing victims might say the attack or injury was not as bad as it sounded or looked. Recanting victims might change their story completely. Further, victims might love the defendant and hope they would change. "70 to 75 percent of my victims will minimize the incident or completely recant their original statements," and 90 percent were at least uncooperative.

The defense presented no evidence. Defense counsel moved to dismiss all counts for insufficient evidence. The court denied the motion, holding as to count 2 that the issue of whether the evidence rose to the level of great bodily harm was for the jury to decide. The jury was instructed: "The defendant is charged in count 2 with child abuse likely to produce great bodily harm or death in violation of . . . section 273a, [subdivision] (a). To prove that the defendant is guilty of this crime, the People must prove that the defendant willfully inflicted unjustifiable physical pain or mental suffering on a child and the defendant inflicted pain or suffering on the child under circumstances or conditions likely to produce great bodily harm or death. . . . The phrase 'likely to produce great bodily harm or death' means the probability of great bodily injury or death is high. Great bodily harm means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. If the child is a person under the age of 18,

6

the child does not have to actually suffer great bodily harm, but if a child does suffer great bodily harm, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed the offense."

## DISCUSSION

Galvez argues that the jury's guilty verdict of felony child abuse (count 2) was unsupported by substantial evidence that he struck eight-year-old K.F. "under circumstances or conditions likely to produce great bodily harm or death." (§ 273a, subd. (a).) We disagree.

We review a claim of insufficiency of the evidence by examining the evidence "'"'in the light most favorable to the judgment,'"'" and determining whether "'"'it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value,'"'" so as to allow "'"'a reasonable trier of fact [to] find the defendant guilty beyond a reasonable doubt.'"'" (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.) The standard is the same under the federal due process clause. (*Ibid.*) In support of the judgment, we presume the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Farnam* (2002) 28 Cal.4th 107, 143.) "'"'Of course, all of the evidence must be examined, but it is not weighed. All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact.'"'" (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497.) "'"'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict . . . .'"'" (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1332.)

"Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering" is guilty of felony child abuse. (§ 273a, subd. (a).) "The difference between felony child abuse, a violation of section 273a, subdivision (a), and simple child abuse, a violation of section 273a, subdivision (b), is that the latter does not require that the abuse occur under 'circumstances or conditions

7

likely to produce great bodily harm.'" (*People v. Clark* (2011) 201 Cal.App.4th 235, 242, fn. 2.) Section 273a, subdivision (a) "does not require force likely to produce great bodily injury. It requires the willful infliction of injury *under circumstances and conditions likely to produce great bodily injury*. While force may be one circumstance or condition, it is not the only circumstance or condition that may support a conviction for felony child abuse." (*Clark*, at p. 243.) "[C]ircumstances and conditions a reasonable jury could consider include, but are not limited to: (1) the characteristics of the victim and the defendant, (2) the characteristics of the location where the abuse took place, (3) the potential response or resistance by the victim to the abuse, (4) any injuries actually inflicted, (5) any pain sustained by the victim, and (6) the nature of and amount of force used by the defendant." (*Id.* at p. 245, fn. omitted.) Actual great bodily injury is not required. (*Id.* at p. 245, fn. 6.)

Viewing the evidence in the light most favorable to the jury's guilty verdict, K.F., the victim, was eight years old, while the defendant was an adult man who had been drinking beer and tequila. The abuse took place in the kitchen, in which Galvez threw kitchen items and a chair was upended, when K.F. grabbed Galvez by the arm to try and stop him from strangling her mother, Soriano. Galvez punched K.F. once in the head and once on the shoulder; had K.F. responded to the punches or resisted instead of letting go and running to get help, there was a substantial danger of grave injury to her. There was evidence of an abrasion on K.F.'s shoulder, but "[t]he fact that the injuries sustained did not rise to the level of great bodily injury does not mean that there was not a substantial danger or well-founded risk of great bodily injury." (*People v. Clark*, *supra*, 201 Cal.App.4th at p. 246.) Although both Soriano and K.F. minimized or recanted substantial portions of their initial descriptions of Galvez's violence, the jury heard testimony that nearly three-quarters of victims will minimize or recant their original statements.

The jury could reasonably have relied on the characteristics of the eight-year-old victim and her adult male abuser, the danger presented by the violent struggle in the kitchen, and the potential for serious harm had K.F. continued to try to prevent Galvez

8

from strangling her mother rather than running away.  We conclude that there was substantial evidence to support the jury's determination that the abuse of K.F. occurred under circumstances and conditions likely to produce great bodily injury.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.

9