Filed 1/27/14  In re B.L. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.L., a Person Coming Under the Juvenile Court Law. _____ THE PEOPLE,      Plaintiff and Respondent,      v. B.L.,      Defendant and Appellant. | B245912 (Los Angeles County Super. Ct. No. KJ37719) |

APPEAL from orders of the Superior Court of Los Angeles County, Phyllis Shibata, Temporary Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General for Plaintiff and Respondent.

_____

B.L. appeals after the court ordered him a ward of the juvenile court (Welf. & Inst. Code, § 602) as he had engaged in a battery upon his grandmother and his cousin (Pen. Code, § 242) and malicious mischief (Pen. Code, § 594, subd. (a)). He was ordered removed from the custody of his grandmother, his legal guardian, and suitably placed. The maximum term of confinement was one year four months, less 24 days.

He contends the evidence is insufficient to support the juvenile court's orders that he committed battery. The contention lacks merit.

## BACKGROUND

1. *The People's case-in-chief.*

On the date of the offenses, October 24, 2012, B.L. (appellant) was 14 years of age. He lived in Baldwin Park with his grandmother, E. R. (Mrs. R.), age 64.

We view the evidence adduced at the adjudication in the light most favorable to orders of the juvenile court. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809; *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1372-1373.)

Mrs. R. was the legal guardian for her daughter's children: appellant, Dominic, age seven, Alicia, age 13, and Helena, age 12. Also, when her granddaughter S.G. (S.), appellant's cousin, age 19, was at work, Mrs. R. took care of S.'s daughter, age three.

a. *S.G.'s testimony.*

On October 24, 2012, appellant was suspended from school. His cousin, S., left work and picked him up at school. Appellant told her that he was upset Mrs. R. did not come personally to pick him up. He told S. for that reason, he was "going to cause a scene" when he got home.

On S.'s part, this was not the first time that week that S. had to leave work to go to the school to drive appellant home. She was worried about this affecting her job, and she was annoyed with him. He had a bad attitude about the suspensions: he acted as if being suspended "was funny."

2

Once home, appellant sat down at the kitchen table to eat. He began "cussing" at Mrs. R. He kept asking her why she did not come to the school personally to pick him up. When he finished eating, he went into the family room. The other children in the house were watching television. He ordered his brother and sisters and S.'s daughter to leave so he could watch the movie he had chosen. His sister, Alicia, sat down on the sofa next to him, and a physical fight broke out. He got on top of her on the sofa and began pummeling Alicia with his fist.

Mrs. R was on the telephone. She dropped it and pulled appellant off Alicia. Mrs. R. scolded him. Appellant attempted to take money from Mrs. R.'s purse. Appellant then punched a picture frame and a mirror on the wall, breaking them. Mrs. R. pushed appellant down on the sofa. Appellant put Mrs. R. in a bear hug and punched her once in the back.

S. was on the telephone with the 9-1-1 operator. When she saw appellant punch Mrs. R., she handed the telephone to one of appellant's sisters and intervened. S. attempted to pull Mrs. R. from appellant's grasp. Appellant stood up, turned on S. and pushed her up against the refrigerator. He punched her five times on top of her head, then walked out the back door.

S. testified that she was five feet tall and weighed about 119 pounds. Appellant was five feet two inches tall and weighed 140 or 145 pounds.

    b. *Mrs. R.'s testimony.*

Mrs. R. testified that evening, appellant arrived home angry.[1] As he ate, he directed a stream of profanity at her and was disrespectful. She informed him that she could not pick him up as she had no car. Also, she said that she was not his servant, nor was she the maid. When he finished eating, he walked into the family room.

---

[1]    Mrs. R. testified with the assistance of a Spanish interpreter.

In the family room, he started fighting with Alicia. Mrs. R. told him, "Idiot, why are you hitting the girl" and "Leave her alone." Appellant ignored Mrs. R. and kept on hitting his sister. S. intervened by grabbing appellant by the shirt to pull him off. Mrs. R. was on the telephone with the doctor. She dropped the telephone and pushed appellant down on the sofa, preventing him from going after his sister.

Appellant hugged Mrs. R. to him and punched her in the back. He called Mrs. R. a "f----- b----" among other profanities, and she slapped him. She slapped him either because he was disrespectful or to prevent him from going after her granddaughter. She told him, "Now you are going to pay for this. I'm tired." She attempted to keep him sitting on the sofa until the police arrived. However, he got up and broke a picture frame that was sitting on a table and a mirror that was hanging on the wall. He then went after S. in the kitchen. He walked out of the residence, commenting to Mrs. R. that the police were not going to do anything to him anyway.

When appellant left, Mrs. R. was also angry. This was not the first time something like this had happened. Appellant had lashed out when he had no reason to be angry.

Mrs. R. testified frankly that appellant had been addressing Mrs. R. with profanities, and that evening they were both "saying things to one another."

Appellant returned home several hours later, and he was taken into police custody.

2. *The defense.*

a. *The investigating probation officer's testimony.*

In defense, appellant called the investigating probation officer. The probation officer testified that during his investigation, he had contacted Mrs. R. by telephone to record her version of the batteries and malicious mischief. Mrs. R. spoke only Spanish so S. spoke to the probation officer over the telephone, translating Mrs. R.'s statements to him. S. told him that Mrs. R. said appellant had arrived home that day. Appellant immediately started pushing and shoving the younger children around. Mrs. R. had to strike appellant twice in the face with her fist to get him to stop. Appellant responded by striking Mrs. R. twice in the back. As the probation officer understood it, during the

4

telephonic interview, Mrs. R. was standing right by S. as S. spoke to him. He believed that during the interview, S. was translating his questions for Mrs. R. and then relaying to him Mrs. R.'s replies.

        b. *Appellant's testimony.*

Appellant testified on his own behalf. He claimed that S. arrived at school that afternoon and "gave him attitude" concerning his suspension. She called him a "dumbass." When he arrived home, Mrs. R. was angry. Mrs. R. kept after him, asking why he had been suspended. She called him, "You stupid," and "Dummy." He was upset because Mrs. R. did not come to the school. Apparently, that made his situation more difficult as the school had telephoned the police. He implied that things would have been better if Mrs. R. personally had been present to speak to the school authorities.

After dinner, appellant went into the family room, and Alicia gave him a hard time about the suspension. They scuffled over a DVD of a movie, and she hit him and kicked him, starting a socking match. Mrs. R. grabbed appellant by his shirt to pull him off Alicia. Then S. pulled on his shirt to pull him off his sister and hit him. Mrs. R. threw appellant down on the sofa. Mrs. R. and S. were trying to keep him in the house. He tried to get up. His sister was punching him on the head. He closed his eyes, and all three of them were hitting him. Alicia and S. scratched him on the back.

He claimed during the melee, all he did was block blows and try to defend himself. He did not break any personal property: Alicia or S. hit the mirror and broke it. When the women had him on the sofa, S. socked him on the chest and cheek, and Mrs. R. hit or punched him in the face three or four times.

Appellant claimed that the broken mirror belonged to him. He said the melee happened in the living room, not in the family room. Appellant denied that he was angry when he arrived home that evening. He did not raise his voice or use profanity. He admitted that prior to the evening in question, he had been suspended from school a number of times, and either Mrs. R. or S. had to come and pick him up at the school.

The juvenile court sustained the petition, finding true the two incidents of battery and malicious mischief.

# DISCUSSION

1. *Standard of review.*

Recently, in *People v. Whisenhunt* (2008) 44 Cal.4th 174, the California Supreme Court summarized the well-established standard of review. " 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' [Citation.]" (*Id.* at p. 200.)

" ' "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]". . . .' [Citation.]" (*People v. Barnes* (1986) 42 Cal.3d 284, 303-304, 306.)

The uncorroborated testimony of a single witness is sufficient to sustain a conviction unless it is physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Indeed, " '[t]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions. [Citations.]' " (*In re Robert V.* (1982) 132 Cal.App.3d 815, 821.)

The law regarding appellate review of claims challenging the sufficiency of the evidence in the juvenile context is the same as that governing review of sufficiency claims generally. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.)

2. *Self-defense and parental discipline.*

"[A] defendant acts in lawful self-defense if 'one, the defendant reasonably believed that he was in imminent danger of suffering bodily injury . . . or was in imminent danger of being touched unlawfully; two, the defendant reasonably believed that the immediate use of force was necessary to defend against that danger; and three, the defendant used no more force than was reasonably necessary to defend himself against that danger.' " (*People v. Clark* (2011) 201 Cal.App.4th 235, 250 (*Clark*), quoting from CALCRIM No. 3470.)

"A parent has a right to reasonably discipline by punishing a child and may administer reasonable punishment without being liable for a battery. [Citations.] This includes the right to inflict reasonable corporal punishment. [Citation.]" (*People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050.)

The right to parental discipline allows the use of reasonable force to discipline a child. (*Clark, supra*, 201 Cal.App.4th at p. 250.) "[T]he use of physical force against a child is justified 'if a reasonable person would find that punishment was necessary under the circumstances and that the physical force used was reasonable.' [Citation.] Thus, 'corporal punishment is unjustifiable when it is . . . not necessary, or when such punishment, although warranted, was excessive.' [Citation.]" (*Id.* at p. 250, in part quoting from CALCRIM No. 3405.)

7

The court in *Clark, supra*, 201 Cal.App.4th at page 251, footnote 12, also explained: "When a parent engages in reasonable corporal discipline, the child does not have the right to resist that discipline by use of force against the parent. Consequently, it does not matter who is the initial aggressor when a parent exercises the right to discipline and the discipline employed is reasonable. Also, the rules concerning mutual combat have no applicability when a parent justifiably disciplines a child. Nor is the parent necessarily required to stop disciplining a minor just because a minor who initially resists with force stops using force against the parent, whereas self-defense rules require the defendant to stop using force when the danger of an attack or unlawful touching no longer exists."

3. *The analysis.*

Appellant's contention misapprehends the nature of appellate review for substantial evidence. An appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Davis* (1995) 10 Cal.4th 463, 509.) It is not the function of a reviewing court to reweigh the evidence, reevaluate the credibility of witnesses or redetermine factual conflicts, as those functions are committed to the trier of fact. (*People v. Culver* (1973) 10 Cal.3d 542, 548.) Even if a reviewing court might make contrary factual findings or draw different inferences, it is not permitted to reverse the judgment if the circumstances reasonably justify those found by the trier of fact. (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

Here, by implication, the juvenile court found appellant came home angry and then started taking it out on everyone present. He was impertinent and directed profanities at his grandmother, Mrs. R., age 64, while eating his dinner. Then, in the family room, he started in on the younger children. He precipitated a physical fight with Alicia, age 13, and he was getting the better of her, lying atop her, pummeling her, when Mrs. R. intervened. Then appellant turned on Mrs. R., giving her a bear hug and punching her on the back. Appellant addressed more profanity to Mrs. R., including calling her a "f----- b----," and she slapped him. S. was already on the telephone to the 9-

8

1-1 operator. She intervened to prevent Mrs. R. from getting hurt, and to help Mrs. R.'s efforts to keep appellant at the residence until the police arrived. But appellant got up and walked out the back door. As he walked out, he punched S. in the kitchen five times in the head. At some point in the melee, he also punched a picture frame and mirror belonging to Mrs. R., breaking them both.

The above evidence amply supports findings of battery on Mrs. R. and S. At the adjudication, appellant claimed that he acted in self-defense and by implication that Mrs. R. acted with excessive force in disciplining him. But the juvenile court did not believe his adjudication claims insofar as they differed from those of Mrs. R. and of S. It found no evidence of excessive force during parental discipline.

Mrs. R. was appellant's guardian. Apparently, this was not the first time appellant had become upset and attempted to work out his anger by being verbally and physically abusive to his family. As appellant's guardian and the guardian of the other children in the household, Mrs. R. was entitled to prevent appellant from using his superior strength to push the other children around and to beat them up. Furthermore, Mrs. R. was not acting unreasonably when she slapped appellant once in the face for directing disrespectful and abusive language at her.

S. was justified in stepping in to protect appellant's 13-year-old sister and Mrs. R., age 64, from injury. (See *People v. Randle* (2005) 35 Cal.4th 987, 894-1000 [a person with grounds to reasonably believe that great bodily injury is about to be inflicted upon another may protect that person from attack].) Appellant was not acting reasonably in self-defense when he pushed S. up against the refrigerator and punched her in the head five times.

The juvenile court did not misapply the law of self-defense or the defense of others and thereby deny appellant due process at the adjudication.

**DISPOSITION**

The orders of the juvenile court are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

ALDRICH, J.

10