Filed 11/20/15  In re Tyler M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re TYLER M., a Person Coming Under the Juvenile Court Law. | |
| | D067528 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J235919) |
| v. | |
| TYLER M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Roderick

Shelton, Judge.  Affirmed.

Stephen M. Vasil, under appointment by the Court of Appeal for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General,

Arlene A. Sevidal, Christen Somerville, Deputy Attorneys General, for Plaintiff and

Respondent.

The San Diego District Attorney filed a petition with the juvenile court under Welfare and Institutions Code section 602, charging Tyler M. with committing misdemeanor battery against his father (Father).  (Pen. Code,[1] § 242.)  Following a hearing, the court found the allegation true, declared Tyler a ward of the court and placed him on probation under specified conditions.

Tyler contends the evidence is insufficient to support the true finding that he committed battery because "[n]o rational trier of fact could have concluded that the prosecution proved beyond a reasonable doubt that [he] did not act in self-defense."  Tyler also challenges certain probation conditions as unconstitutionally vague.  We affirm the order.

## FACTUAL BACKGROUND

Father testified that on August 10, 2014, he had bought Tyler pants for him to wear the next day, the first day of school.  Tyler did not like the pants and threw them on the ground as he yelled at Father.  They argued.  Father became angry and gave Tyler a "bear hug."  Father stated Tyler reacted by giving him between one and five "body slaps" on his torso in an attempt to free himself from the bear hug.  Tyler "fell to the ground" and complained about his knee, which had been operated on in the past year.  Tyler's slaps did not hurt Father physically; instead, Father felt "mental pain," explaining, "I don't want to be yelled at when I'm trying to do something nice for him."  Father added, "You know, [Tyler] is almost 18 [years old].  You know, obviously I'm bigger than him,

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

and so I don't really think about him trying to get physical with me. Yeah. I'm a little disappointed about his attitude but, you know, teenagers are tough." Father admitted on cross-examination that he had had a few beers that day. Father testified he "absolutely" had not wanted this case to be prosecuted. On cross-examination, defense counsel asked Father how much force Tyler had used against him, and Father replied, "He was just trying to get—squirm out, and in that process, you know, I took some hand shots and threw him to the ground."

Tyler's mother testified that during the incident Tyler was "pushing away and flailing, and you know, trying to get a [six-foot one-inch tall] man, you know, off of a [five-foot eight-inch tall child, who weighed 130 pounds]." She added, "[T]here was arguing, a bunch of flailing, then I saw [Father and Tyler] go to the ground." During the incident, Tyler also accidentally struck his mother, who was seven months pregnant. Mother testified that Father had drunk other alcohol besides beer that night. Father asked Mother to call police, and she called 911, telling the operator Tyler was "punching" Father.

San Diego County Sheriff's Deputy David Cortez testified that when he reported to Tyler's family's apartment that night, Mother told him that Tyler, in attempting to get away from Father, had punched Father several times in the torso during the altercation. Father also told Deputy Cortez that Tyler had hit him several times in the torso. Tyler denied hitting Father, but admitted he "shoved" him.

Tyler did not testify at the hearing. The court requested the parties focus their closing arguments: "This is a minor and the parent. So what the court wants both parties

3

to focus on is the discipline part of this bear hug. If the court finds that's discipline, then the minor, it's my understanding, cannot fend off." After argument by counsel, the court declined to find Tyler had acted in self-defense: "What the court is looking at here's a situation where we have the father and son. So I also look at whether or not, in my opinion, . . . this was child abuse. And he had to get away from the child abuse looking at the jury instructions—just one moment. Under [simple] battery [CALCRIM No.] 960, it talks about battery. One thing it does say the bench notes under [CALCRIM No.] 960, if there's sufficient evidence of reasonable parental discipline, the court has a sua sponte duty to instruct on the defense. And I understand that's if the father was the defendant, which we don't have in this case."

The Court ruled: "The court has to look at whether or not a minor can defend himself as he did and the court finds it was punching the parent based upon discipline, and that's what I'm looking at right now. So even if I look at the case that you gave me, [*People v. Myers* (1998) 61 Cal.App.4th 328,] I'm also looking at whether or not a parent who is trying to discipline his child when the child—I understand your argument is that he is trying to get away from the parent because of his knees. The court at this time does not actually believe that at this point. . . . [¶] So after the court did review as to the minor's case and Penal Code section 693[2] and after hearing all the evidence in the case,

---

2      Section 693, concerns lawful resistance to the commission of a public offense and states: "Resistance sufficient to prevent the offense may be made by the party about to be injured: [¶] 1. To prevent an offense against his person, or his family, or some member thereof. [¶] 2. To prevent an illegal attempt by force to take or injure property in his lawful possession."

4

the court does not find that when the father was using the restraint of the son with the bear hug that that was any type of child abuse, and so the court finds the minor does not have the right to use battery or punching the father at this time."

## DISCUSSION

## I

### *Sufficiency of the Evidence*

Tyler contends insufficient evidence supported the juvenile court's finding that he committed battery on his father because no rational finder of fact could have concluded he did not act in self-defense. Tyler further contends we should reverse the judgment because the trial court relied on a misunderstanding of the legal justification for self-defense. Tyler specifically contends based on the trial court's statements set forth above: "[T]he court misconstrued the justification of self-defense to require that Tyler first suffer bodily injury or otherwise be touched unlawfully before he could lawfully resist. The court believed, in other words, that [Father's] actual use of justifiable corporal punishment precluded Tyler from raising self-defense. Yet, contrary to the court's interpretation, Tyler had the right to 'prevent an offense against his person' [under section 693] by fending off an imminent threat of bodily injury or unlawful touching."

A. *Legal Principles*

In assessing a challenge to the sufficiency of the evidence in a juvenile delinquency proceeding, this court reviews the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859.) This court does not reevaluate the credibility of

5

witnesses, reweigh the evidence, or resolve evidentiary conflicts. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) The testimony of one witness is enough to sustain a juvenile adjudication. (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.)

### 1. *Battery*

Battery is a general intent crime. (*People v. Lara* (1996) 44 Cal.App.4th 102, 107.) Thus, the crime requires a " 'willful and unlawful use of force upon the person of another.' [Citation.] In this context, the term 'willful' means 'simply a purpose or willingness to commit the act.' " (*Ibid.*) Reckless conduct alone is not sufficient. (*People v. Lathus* (1973) 35 Cal.App.3d 466, 469-470.) "However, if an act ' "inherently dangerous to others" . . . [is] done "with conscious disregard of human life and safety," the perpetrator must be aware of the nature of the conduct and choose to ignore its potential for injury, i.e., act willfully. If these predicates are proven to the satisfaction of the trier of fact, the requisite intent is . . . established by the evidence.' " (*People v. Lara,* at pp. 107-108.)

### 2. *Self-Defense*

Self-defense is the only legal justification for battery. (*People v. Mayes* (1968) 262 Cal.App.2d 195, 198.) To establish self-defense as a justification for battery, " 'the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and ' . . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065.)

Parents have the right to discipline their children by administering "reasonable punishment," including "reasonable corporal punishment," "without being liable for a battery." (*People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050 (*Whitehurst*).) "[T]he use of physical force against a child is justified 'if a reasonable person would find that punishment was necessary under the circumstances and that the physical force used was reasonable.' " (*People v. Clark* (2011) 201 Cal.App.4th 235, 250 (*Clark*); CALCRIM No. 3405.) A parent's use of physical force to discipline a child is justified where "(1) [the parent has] a genuine disciplinary motive; (2) [the circumstances furnish] a reasonable occasion for discipline; and (3) [the] disciplinary measure [is] reasonable in kind and degree." (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 91 (*Gonzalez*).)[3]

Because the use of reasonable corporal discipline by a parent is permitted, "the child does not have the right to resist [such] discipline by use of force against the parent." (*Clark, supra,* 201 Cal.App.4th at p. 251, fn. 12.) Put differently, reasonable corporal discipline by a parent is not unlawful. Accordingly, a child who hits a parent in response to such discipline does not act in self-defense.

---

[3] The issue in *Gonzalez* was whether a report was properly submitted to the Child Abuse Central Index under the Child Abuse and Neglect Reporting Act based on evidence that a mother spanked her 12-year-old daughter with a wooden spoon with enough force to produce visible bruises. (*Gonzalez, supra,* 223 Cal.App.4th at p. 75.) The court noted that a parent has a right to reasonably discipline a child, and she may administer reasonable punishment without being held criminally or civilly liable. (*Id.* at p. 89.)

B. *Analysis*

We have reviewed the record as a whole and conclude it supports the juvenile court's findings. Father and Mother testified that Tyler touched Father in anger during the altercation. Deputy Cortez testified that Father, Mother, and Tyler told him the night of the incident that Tyler had touched Father, although Tyler characterized it as "shoving." The incident was sufficiently serious that Father asked Mother to call the police. Indeed, as the transcript of Mother's 911 call shows, she stated Tyler had "punched" Father. We conclude this evidence was sufficient to support the juvenile court's finding Tyler committed battery under section 242. (*In re Ryan D, supra,* 100 Cal.App.4th at p. 859.)

We next find that substantial evidence supports the finding that Tyler was not acting in self-defense. Under the cases cited above, the analysis turns on whether Father used reasonable corporal discipline in giving Tyler a bear hug. If Father's conduct constituted reasonable corporal discipline, then it was lawful (*Whitehurst, supra,* 9 Cal.App.4th at p. 1050), and Tyler was not legally entitled to resist (*Clark, supra,* 201 Cal.App.4th at p. 250). Substantial evidence supports the conclusion that Father's actions constituted reasonable parental discipline. As noted, a parent's conduct falls within the privilege to impose reasonable discipline on his or her child where there exists: (1) a genuine disciplinary motive; (2) a reasonable occasion for discipline; and (3) a disciplinary measure reasonable in kind and degree. (*Gonzalez, supra,* 223 Cal.App.4th at p. 91.)

8

With respect to the first requirement, Father's testimony provides substantial evidence that he gave Tyler a bear hug to discipline him for throwing a tantrum about the clothes purchased for Tyler, and thus Father acted out of a genuine disciplinary motive. As to the second requirement, whether the circumstances of a teenager reacting angrily to an act of kindness by his parents provided a reasonable occasion for discipline (or, in other words, whether corporal punishment was necessary under the circumstances) was a question for the court as fact finder. (*Whitehurst, supra,* 9 Cal.App.4th at p. 1050 [" '[B]oth the reasonableness of, and the necessity for, the punishment is to be determined by a jury, under the circumstances of each case.' "].) Based on the evidence, a rational factfinder could conclude that the circumstances necessitated physical discipline. Parents are warranted in using physical restraint to discourage a teenager's angry outbursts in response to a favor when the teenager does not get his way.

The third consideration is whether Father's punishment—giving Tyler a bear hug—was reasonable in kind and degree. "It has been suggested that the reasonableness of a given instance of corporal punishment 'depends on four factors: the age of the child, the part of the body that was struck, the instrument used to strike the child, and the amount of damage inflicted.' " (*Gonzalez, supra,* 223 Cal.App.4th at p. 93.) In view of those factors, substantial evidence supports the finding that the punishment here was reasonable in kind and degree. In particular, at 17 years old, Tyler was nearly an adult at the time of the incident. Although Father said he threw Tyler to the ground, it was in the context of restraining him. There is no indication that Tyler suffered harm from the incident. At any rate, Father's discipline was not unreasonable under the circumstances

9

here. The witnesses at the hearing did not describe the bear hug in detail. On appeal Tyler relies on a book on Brazilian Jiu-Jitsu—that was not presented at trial or admitted into evidence—to describe a "bear hug" as "not a friendly embrace, but a grappling hold in which the aggressor wraps his arms around his opponent and holds him tightly to his chest. 'The bear hug is a very common form of attack' in 'street fights.' " We do not rely on that extra-record description. (*People v. Jarrett* (1970) 6 Cal.App.3d 737, 739 ["Under well established appellate rules, this court . . . may not properly consider alleged facts which are wholly outside the record on appeal."]

In any event, the trial court as the trier of fact did not believe the bear hug was unreasonable: "I understand [the defense] argument is that [Tyler] is trying to get away from the parent because of his knees. The court at this time does not actually believe that at this point." We may not review that credibility determination. (*In re Casey D, supra,* 70 Cal.App.4th at pp. 52-53.) Regardless of whether we agree with the wisdom of using a bear hug as method to discipline a 17-year-old, the record contains sufficient evidence to allow a rational factfinder to conclude Father's conduct constituted reasonable parental discipline. It follows that Tyler had no right to physically resist such punishment, such that his use of force on Father constituted battery.

In light of the above, we reject Tyler's other contention we should reverse the judgment because the trial court relied on a misunderstanding of the legal justification of self defense. Here, the court did not misunderstand the applicable law. Rather, it properly focused on the parent-child relationship to conclude that Father's discipline was reasonable; therefore, Tyler was not entitled to rely on self-defense.

10

## II.

*The Challenged Probation Conditions Are Not Unconstitutionally Vague*

Tyler contends certain probation conditions are unconstitutionally vague. The first challenged condition states: "[Tyler] is authorized to reside with his parents at [a specified address]." A second condition states: "The minor shall follow the rules and instructions of the person with whom [he] is ordered placed by the Court. The minor shall not leave the court ordered placement without permission of a parent or guardian." Tyler claims these provisions read together are unconstitutionally vague because the court had not "placed" him with anyone, but instead it had authorized him to live at a specific address. Tyler requests we strike these conditions, arguing: "Further, since there was no '[c]ourt ordered placement' . . . , it is impossible for [him] to remain in that placement unless he first gets permission to leave from his parents."

This argument lacks merit. The court's oral pronouncement, which modified the probation officer's recommendation slightly, stated Tyler was authorized to reside "with his parents" at a specific address. Therefore, it was not unconstitutionally vague to require Tyler to obey the parents with whom he was authorized to reside or to request their permission before leaving the house. We also read this condition in conjunction with many other conditions imposed, requiring the parents to participate in Tyler's school program and joint counseling with him, and ensure he follows all conditions of probation. These conditions are aimed at improving the relationship between Tyler and his parents, and to avoid a repeat of the battery incident that brought about this case. The parents

11

could best comply with the other probation requirements if Tyler were required to obey them and obtain their permission before leaving home.

Tyler next contends a probation condition stating, "The minor shall not leave the County of San Diego without permission of the Probation Officer" is unconstitutionally vague because it does not include a scienter requirement, and overbroad because it infringes his right to travel. Tyler requests we modify it to read: "The minor shall not *knowingly* leave County of San Diego without permission of the Probation Officer." He likewise claims we should modify and insert a scienter requirement in a probation condition stating: "The minor shall not use or possess alcohol, a controlled substance, or any substance the minor knows or reasonably should know is a mind altering substance without a valid prescription." His proposed modification would read: "The minor shall not *knowingly* use or possess alcohol, a controlled substance . . . ." He further argues this condition is overbroad because it infringes on his right to own private property.

The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. "[E]ven where there is an invasion of protected freedoms 'the power of the state to control the conduct of children reaches beyond the scope of its authority over adults.' " (*Ginsberg v. New York* (1968) 390 U.S. 629, 638.) This is because juveniles are deemed to be "more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed." (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941.) Thus, " 'a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for

12

a minor under the supervision of the juvenile court.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.)

It is well established that a probation violation must be willful to justify revocation of probation. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379; *People v. Galvan* (2007) 155 Cal.App.4th 978, 982; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295; § 1203.2, subd. (a).) It is also established that "[S]ection 26 provides that a person is incapable of committing a crime where an act is performed in ignorance or mistake of fact negating criminal intent; a crime cannot be committed by mere misfortune or accident" (*People v. Coria* (1999) 21 Cal.4th 868, 876) and that a probation condition "should be given 'the meaning that would appear to a reasonable, objective reader.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 382).

In general, a probation condition is not unconstitutionally vague when it spells out with " ' "reasonable specificity" ' " (*In re Sheena K., supra*, 40 Cal.4th at p. 890) what is prohibited in such a way that persons of common intelligence need not "guess at its meaning and differ as to its application." (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1184.) Prohibiting probationers from drinking alcohol is simply not nebulous, and it is unlike prohibiting them from activity involving an ambiguous category of associations, places, or items, such as associating with a gang member (whether known or unknown). In our view, there is no need to explicitly require a probationer to know that something falls within a prohibited category when the category is essentially clear. (See *People v. Rodriguez* (2013) 222 Cal.App.4th 578, 593 [" 'Although the possessor's knowledge of the presence of the controlled substance and its nature as a restricted

13

dangerous drug must be shown, no further showing of a subjective mental state is required.' "].)

We conclude the challenged probation conditions are not unconstitutionally vague or overbroad. "As we have explained on other occasions, the underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K., supra,* 40 Cal.4th at p. 890.) The condition that Tyler not leave San Diego County without permission of the probation officer is clear in meaning. For the reasons set forth in case law cited above, the probation condition that Tyler not possess alcohol or controlled substances is not unconstitutionally vague either. We decline to inject an unnecessary scienter condition in these probation conditions. Tyler's probation may not be revoked unless he willfully violates these conditions. (See *People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1129.)

The challenged conditions are reasonably related to helping Tyler meet the other conditions of his probation and avoid the activities and company that would undermine his progress or potentially lead to future criminality; therefore they are not overbroad. "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K., supra,* at p. 890.)

14

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.