Filed 1/20/22  P. v. Henderson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090899 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE023239 ) |
| v. | |
| DERRICK O'NEAL HENDERSON, | |
| Defendant and Appellant. | |

Defendant Derrick O'Neal Henderson and codefendant Zuri James entered an apartment, pointed guns at the occupants, and threatened to shoot them.  A jury found defendant guilty of, among other counts, one count of making a criminal threat, and two counts of assault with a semiautomatic firearm, and found true personal use of a semiautomatic firearm allegations as to each of those counts.  On appeal, defendant argues:  (1) the trial court erroneously admitted gang evidence, and defense counsel provided ineffective assistance of counsel in failing to object to the evidence; (2) evidence was insufficient to prove defendant was not acting in defense of others; and

1

(3) the trial court abused its discretion when it declined to strike the firearm enhancement allegations.

In supplemental briefing, defendant contends in light of the recent passage of Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1) (Assem. Bill No. 518), this matter must be remanded to allow the trial court to consider whether it should exercise its newly-granted discretion to stay the sentence on the assault with a semiautomatic firearm conviction, rather than the criminal threat conviction. In a second round of supplemental briefing, defendant also contends Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021 ch. 695 § 5.3) (Assem. Bill No. 124) and Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021 ch. 731 § 1.3) (Sen. Bill No. 567) apply to defendant's case, and the matter must be remanded for resentencing because both bills affect the trial court's decision to apply the upper term sentence on various counts. The People agree remand is warranted based on these three bills, and we agree with the parties. We will affirm the judgment of conviction and remand the matter to the trial court for a full resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

BACKGROUND

James's sister and brother, C.J. and A.J., respectively, were in C.J.'s apartment one evening, along with C.J.'s boyfriend and daughter. James had lived at the apartment, but moved out to stay with defendant, whom she was dating. Some of her possessions, including the pot of a rice cooker, were still at the apartment. C.J. and James had recently argued, and James had threatened to "beat [C.J.] up."

While C.J. was in the shower, James knocked on the apartment door. C.J. did not want to let her in the apartment, but decided she was there to pick up the piece of the rice cooker, so she got out of the shower to give it to her. A.J. opened the door and James rushed into the apartment, grabbed the pot for the rice cooker, and confronted C.J. She challenged C.J., asking if she wanted to fight, but C.J. refused. James then pulled out a

2

handgun, pointed it at C.J., and started "waving it around." A.J. put his hand on James's shoulder and told her to calm down.

Defendant then came into the room with a "compact assault rifle," pointed it at A.J., and said, "get your hands off my bitch." A.J. raised his hands in the air and said James was his sister, and defendant replied, "no, that's my bitch." Defendant continued pointing his gun at A.J., called A.J. a "bitch ass nigga," and said he would "air this mother fucker out," which A.J. interpreted as a threat to "shoot up the place." Defendant was "jumping and shaking," and said, "that's on the set." Defendant pointed his gun at both C.J. and A.J., although his focus was on A.J. Defendant and James threatened both C.J. and A.J., saying they would "blow [their] heads off."

Defendant and James then left, backing out of the apartment, and pointing their guns. After they had left, police arrived at the apartment and James called C.J. to tell her "I will kill you next time, cuz." Defendant then got on the phone, called C.J. names, and accused C.J. of getting James raped.

The next day, Sacramento County police saw defendant and James in a truck and tried to pull them over. The pair fled, and led officers on a high-speed chase during which they reached speeds of up to 120 miles per hour and committed many Vehicle Code violations. When officers arrested defendant, they found shell casings from an assault rifle on his person, and later found ammunition in his apartment. Police later found a handgun that had been discarded along the route of the chase.

The prosecution charged defendant with making criminal threats (Pen. Code, § 422; count one),[1] assault with a semiautomatic firearm (§ 245, subd. (b); counts two and three), felon in possession of a firearm (§ 29800, subd. (a)(1); count four), evading a peace officer (§ 2800.2, subd. (a); count five), and possession of ammunition (§ 30305,

---

[1] Undesignated statutory references are to the Penal Code.

3

subd. (a)(1); count six).  The prosecution also alleged defendant personally used a firearm (§ 12022.5, subd. (a)), with respect to count one and used a semiautomatic firearm (§ 12022.5, subds. (a), (d)), with respect to counts two and three.

A jury found defendant guilty of all counts and found true the firearm enhancement allegations.  The trial court denied defendant's motion to strike the firearm enhancements and sentenced defendant to an aggregate term of 23 years in state prison.  As relevant here, defendant's sentence included the upper term of nine years for count two, plus 10 years for the firearm use enhancement, and the upper term of three years for count one, plus 10 years for the firearm use enhancement.  The trial court stayed execution of the sentence for count one, along with its firearm use enhancement, under section 654.

## DISCUSSION

### I

### *Admission of Gang Evidence*

Defendant asserts the trial court should have excluded multiple instances of gang evidence at trial, and that this evidence was unduly prejudicial because it was inflammatory, irrelevant, and allowed the prosecution to paint defendant "as just another violent gangster."

A.  *Additional Background*

Before trial, defendant filed a motion in limine to exclude any evidence of defendant's revalidation as an East Coast Crip.  The trial court granted the motion.  At trial, percipient witnesses testified about the language defendant and James used in the apartment.  When defendant entered the apartment, he said "that's on the set."  C.J. testified she did not know the expression but thought defendant "was just gang banging on us."  When the prosecutor asked C.J.'s boyfriend whether he knew what "on the set means," he replied that it was "gang-related."

4

Similarly, after defendant and James left the apartment, James called C.J. and said, "I will kill you next time, cuz." The prosecutor asked C.J. whether "cuz" meant "cousin," and C.J. replied, "Yes. Like Crip, 'cuz, Blood, like." A.J. likewise testified that "cuz" was used by Crips, and that James "told me, uh, her boyfriend was affiliated."

Several police officers also testified, primarily about their surveillance of defendant and the chase leading up to his arrest. When each of the officers testified, they testified they were assigned to the North Area gang enforcement team or were assisting the gang enforcement team. Sergeant Aurellio Villegas, the supervisor of the team, explained the team was working on defendant's case because the case concerned an assault involving a firearm in the area the team covered. On cross-examination, defense counsel asked Officer Brian Airoso whether the surveillance activities had anything to do with "the gang enforcement team," and Officer Airoso responded, "[i]t has everything to do with our gang enforcement team."

Defense counsel did not object to any of these statements. He did object, however, in one apparent attempt to introduce gang evidence by James' counsel. When cross-examining Officer Michael Phelan, James' counsel attempted to elicit a statement from the officer that defendant's "favorite color was actually blue" [2] and later asked whether defendant had any tattoos. Defense counsel objected to both questions and the trial court sustained the objections.

B. *Analysis*

Citing *People v. Cardenas* (1982) 31 Cal.3d 897, defendant contends the statements made, both by the police officers and the percipient witnesses, were unduly prejudicial because "[e]vidence of gang membership . . . often provokes an emotional

---

[2] Although no testimony concerning gang colors was introduced at trial, defendant argues it is "common knowledge for people living in cities" that the color blue "is associated with the Crips."

5

reaction directly at odds with the jury's duty to carefully and critically weigh the evidence using the tools of logic and reason." Defendant's failure to object at trial forfeits any contention that the testimony was improperly admitted. (Evid. Code, § 353; *People v. Ervin* (2000) 22 Cal.4th 48, 82.) Anticipating this outcome, defendant asserts defense counsel's failure to object to the testimony constituted ineffective assistance of counsel.

To prevail on a claim of ineffective assistance, defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693, 697-698].) "[I]n the heat of a trial, defense counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. The choice of when to object is inherently a matter of trial tactics not ordinarily reviewable on appeal." (*People v. Frierson* (1991) 53 Cal.3d 730, 749.)

Defense counsel successfully objected when James' counsel attempted to elicit testimony implying defendant was wearing gang colors, but did not object in other circumstances, suggesting a tactical decision about what kinds of evidence were most problematic for defendant. Similarly, rather than objecting, defense counsel used cross-examination to clarify some of the testimony. For example, when cross-examining Sergeant Villegas, defense counsel solicited testimony that the gang enforcement team was involved in the investigation merely because the crime involved firearms and occurred in their territory, which implied a more benign reason for their involvement than specific gang activity.

In addition, defendant was not prejudiced by trial counsel's failure to object. As noted above, the police testimony about gang enforcement team involvement was contextualized on cross-examination, and did not imply defendant was a member of a

gang or that gang activity was implicated in the crime. Likewise, defendant's use of the phrase "on the set" implied only that defendant was using "gang banging" or "gang-related" language, rather than that defendant was actually a member of a gang. Only A.J.'s testimony that James had once told him defendant was gang affiliated in response to a question about James' use of the word "cuz" made explicit reference to defendant's gang affiliation.

But, unlike the testimony in *People v. Cardenas, supra*, 31 Cal.3d at page 914, this comment was not unduly prejudicial. In *Cardenas*, the trial court not only admitted evidence of defendant's membership in a gang, but also allowed the prosecutor to make "broad inquiries suggesting that the gang was involved in criminal activities" and to present evidence concerning defendant's narcotics addiction, none of which was relevant to any issue before the jury. (*Id.* at pp. 905-907.) Given the highly prejudicial effect of that cumulative evidence, and the fact that there was little evidence to prove that defendant perpetrated the charged crimes, the Supreme Court concluded the error was so prejudicial as to require reversal of the defendant's conviction. (*Id.* at p. 910.)

Unlike *Cardenas,* the gang evidence admitted here amounted only to a small number of statements that defendant was affiliated with a gang or used gang language. There was no testimony describing the nature or characteristics of the gang or its members, nor was there testimony to suggest the gang was involved in criminal activity. And, unlike *Cardenas*, the evidence against defendant was significant. Defendant was identified by C.J., A.J., and C.J.'s boyfriend, who all testified consistently about his conduct at C.J.'s apartment. Defendant entered C.J.'s apartment, pointed a gun at C.J. and A.J., and yelled "don't touch my bitch, don't touch my bitch." A.J. raised his hands in the air and defendant threatened to kill them all. The testimony also matched the statements C.J. made in a 911 call shortly after the incident, which was introduced into evidence. Given this evidence, we disagree that the brief references to gangs were prejudicial. We see no ineffective assistance of counsel.

7

## II

### *Insufficient Evidence*

Defendant contends insufficient evidence shows he did not act in lawful defense of others because he only acted to protect James from imminent harm. Defendant argues he reasonably believed James was in danger because A.J. had "grabbed" her when defendant entered the apartment, and defendant did not know who A.J. was. Moreover, defendant used only the requisite amount of force before leaving the apartment. We disagree.

In reviewing the sufficiency of the evidence, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) " 'The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

"We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) " 'If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Kaufman* (2017) 17 Cal.App.5th 370, 381.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Cravens, supra*, 53 Cal.4th at p. 508.)

"Self-defense negates culpability for assaultive crimes." (*People v. Adrian* (1982) 135 Cal.App.3d 335, 340-341.) It requires a reasonable belief in the need to defend against "imminent danger of suffering bodily injury" or "imminent danger of being touched unlawfully." (*People v. Clark* (2011) 201 Cal.App.4th 235, 250.) "Although

8

the belief in the need to defend must be objectively reasonable, a jury must consider what 'would appear to be necessary to a reasonable person in a similar situation and with similar knowledge . . . .' " (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.) "[A] defendant may use force only as long as the danger exists or reasonably appears to exist [citation]." (*Clark*, at p. 250.)

The evidence was sufficient to support the conclusion James was not in imminent danger of any kind. When A.J. placed his hand on James' shoulder, he did so in a "[g]entle" way; C.J. described him as "kind of trying to be the peacemaker and just, like, calm her down." A.J. similarly testified he was trying to "tell her to relax and stuff" in a "calm" way. When A.J. did this, he told James, "you need to calm down" and reassured her they did not want to fight. Moreover, James and defendant both had guns, and no one else in the apartment had any kind of weapon. And although defendant did not know A.J., A.J. immediately identified himself as James' brother when defendant entered the apartment.

Defendant's conduct also continued even after the "threat" to James was removed. After defendant entered the apartment, A.J. raised his hands in the air. Defendant continued pointing his gun at A.J., called him a "[b]itch ass nigga," and threatened to kill C.J. and A.J. From this evidence, the jury could easily have concluded both that James was at no risk of harm and that defendant's conduct under the circumstances was objectively unreasonable. Defense counsel raised the claims in his closing argument that defendant now asserts, and the jury rejected them. We conclude sufficient evidence supported the jury's findings.

III

*Motion to Strike Firearm Enhancement*

Defendant contends the trial court erred when it declined to strike the firearm enhancements because it "did not provide sufficient reasons" for its decision. Specifically, defendant argues his conduct was "less serious" and points to the excessive

9

length of his sentence as mitigating factors. Thus, in his view, the trial court abused its discretion and contravened the intent of the Legislature in its decision. Because, as discussed below, we will be remanding the case for a new sentencing hearing, and the length of a defendant's sentence is, as defendant argues, an important factor for the court to consider in this motion, we will also direct the trial court to consider this decision anew on remand, given the new sentencing landscape. (*People v. Brooks* (2020) 53 Cal.App.5th 919, 927-928; *People v. Castaneda* (1999) 75 Cal.App.4th 611, 613-614; *People v. Shaw* (2020) 56 Cal.App.5th 582, 587.) Although not raised by the parties, we also note the passage of Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), which is effective January 1, 2022, and amends section 1385 to detail specific factors trial courts must consider when exercising discretion under that statute. The parties may wish to raise these factors on remand, as relevant.

IV

*Legislative Changes*

While this appeal was pending, the Governor signed Assem. Bill Nos. 518 and 124, as well as Sen. Bill No. 567. Assem. Bill No. 518, effective January 1, 2022, amends section 654 to authorize trial courts to punish an "act or omission that is punishable in different ways by different provisions of law . . . . under either of such provisions." (Stats. 2021, ch. 441, § 1.) Before the enactment of Assem. Bill No. 518, and when the trial court sentenced defendant, section 654 required the court to punish an act that was punishable in different ways by different laws only "under the provision that provides for the longest potential term of imprisonment." (§ 654, subd. (a).)

Assem. Bill No. 124 and Sen. Bill No. 567, both of which are also effective January 1, 2022, make changes affecting trial court sentencing discretion, including the ability to impose the upper term for a conviction. (Stats. 2021, ch. 695, § 5.3 [Assem. Bill No. 124]; stats. 2021, ch. 731, § 1.3 [Sen. Bill No. 567].) Among other things, Assem. Bill No. 124 sets a presumption that the trial court will impose the lower term

10

under enumerated circumstances, and Sen. Bill No. 567 limits the trial court's ability to impose the upper term, unless certain circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt at trial. (Stats. 2021, ch. 695, § 5.3; stats. 2021, ch. 731, § 1.3.) In his supplemental briefs, defendant argues this matter must be remanded for resentencing so the trial court may reconsider its sentencing decisions under the rubric of the new legislation. The People agree remand is required in this instance, as do we.

Under *In re Estrada* (1965) 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.) As the parties point out, this presumption has been extended to amendments providing trial courts discretion to impose lesser punishment at sentencing and amendments reducing the possible punishment for classes of persons. (See, e.g., *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303-304 [Proposition 57, the Public Safety and Rehabilitation Act of 2016 (enacted Nov. 8, 2016]; *People v. Garcia* (2018) 28 Cal.App.5th 961, 971-972 [Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1013, §§ 1-2)]; *People v. Valenzuela* (2018) 23 Cal.App.5th 83, 87-88 [Senate Bill No. 620 (2017-2018 Reg. Sess.) (Stats. 2017, ch. 682, §§ 1-2) ].) Nothing in Assem. Bill Nos. 518 or 124, or Sen. Bill No. 567, suggests legislative intent that the amendments apply prospectively only, and defendant's case will not be final before January 1, 2022. (*People v. Vieira* (2005) 35 Cal.4th 264, 306.)

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a

material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) There is no clear indication what sentencing decisions the trial court would have made if it had possessed the sentencing discretion given by Assem. Bill No. 518 or was bound by the new requirements under Assem. Bill No. 124 and Sen. Bill No. 567. Thus, we agree with the parties that remand is appropriate so the trial court may fully resentence defendant anew, incorporating the new legislative changes. (See *People v. Buycks, supra*, 5 Cal.5th 857, 896, fn. 15.)

## DISPOSITION

The judgment of conviction is affirmed. The matter is remanded to the trial court for a full resentencing, consistent with the legislative changes discussed herein, effective January 1, 2022. At the resentencing hearing, the trial court shall resentence defendant under the changes made by Sen. Bill No. 567 and Assem. Bill No. 518, consider whether any of the changes made by Assem. Bill No. 124 apply in defendant's case, and reconsider defendant's motion to strike the firearm enhancements, taking into account the direction provided by Senate Bill No. 81.

\s\
BLEASE, Acting P. J.

We concur:

_____\s_____
HULL, J.

_____\s_____
DUARTE, J.